IN THE UNITED STATES DISTRICT COURT
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| A LOVE OF FOOD I, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-10-2352 |
| MAOZ VEGETARIAN USA, INC., *et al.*, | * | |
| Defendants. | * | |

**Memorandum Opinion**

The matters before the Court are: (1) Defendant Maoz Vegetarian USA, Inc. ("Maoz")'s motion for reargument or reconsideration of the Court's July 7, 2011 order denying Moaz's motion to dismiss, Doc. No. 13; (2) Defendants Yair Marinov and Boaz Schweitzer ("Individual Defendants")' motion to dismiss for lack of personal jurisdiction or insufficient service or process, Doc. No. 18; and (3) Plaintiff's motion to authorize service of process upon Individual Defendants in accordance with the Hague Convention, Doc. No. 21. The Court has reviewed the motion papers and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2010). For the reasons articulated more fully below, the Court DENIES Defendant Maoz's motion for reconsideration, GRANTS Individual Defendants' motion to dismiss for insufficient service of process, and DENIES Plaintiff's motion to authorize service of process as moot.

I. **Factual and Procedural Background**

1

The following facts are drawn from the Court's prior memorandum opinion with changes as necessary to reflect subsequent developments in the record. This action arises out of a franchise relationship between Plaintiff A Love of Food I, LLC ("ALOF") and Maoz. Maoz is a Delaware corporation with its principal place of business in New York. Maoz sells franchises for the operation of quick-service vegetarian restaurants throughout the United States that trade under the name "Maoz Vegetarian." ALOF is a limited liability company organized under the laws of the state of Delaware whose principal place of business is in Chevy Chase, Maryland. ALOF currently operates a Maoz Vegetarian restaurant in Washington, DC.

On September 18, 2006, and April 17, 2007, Maoz representative Yair Marinov (one of the Individual Defendants in this case) met with principals of ALOF to begin discussing the possibility of opening a Maoz Vegetarian franchise in Washington, DC. The Amended Complaint is thin on details relating to these meetings, stating only that Marinov "provided the Plaintiff with information regarding the Maoz Vegetarian concept for the purpose of selling them a franchise to be located in the Washington D.C. metropolitan area." Am. Compl. ¶ 8. Defendants did not give ALOF's representatives a copy of any circular describing the details of the franchise opportunity at those meetings.

Discussions continued between the parties, and on June 5, 2007, Marinov requested that ALOF's principal member, Quinn Wallis, provide Marinov with a mailing address so that Marinov could send ALOF a copy of Maoz's Uniform Franchise Offering Circular ("UFOC"). *See* Am. Compl., Ex. A. That same day, Wallis e-mailed Marinov and provided him with a Chevy Chase, Maryland address. Doc. No. 20 Ex. 1 at 4. The next day, Marinov e-mailed Wallis indicating that he had mailed the UFOC to Wallis. Doc. No. 20 Ex. 1 at 5. Marinov was located in his office in New York at the time. Wallis testifies that he received the UFOC to his Maryland

address within a day or two of the mailing, and that the UFOC came in a manila envelope with Marinov's handwriting on the outside of the envelope. Doc. No. 20 Ex. 1 at 3. Maoz contends that it never purposefully intended to mail any packages to ALOF in Maryland, and that Wallis has not provided a copy of the envelope, proof of postage, or an original copy of the UFOC.

The UFOC describes the nature of the prospective franchise relationship between Maoz and ALOF. It lists the duties of each party, sets expectations for how to resolve potential disputes, and outlines the fees that ALOF would owe Maoz for its services. Item 19 of the UFOC, entitled "EARNINGS CLAIM," states that Defendants "do not furnish nor authorize our salespersons to furnish any oral or written information concerning the actual or potential sales, expenses or income of a MAOZ VEGETARIAN Unit. Actual results vary from unit to unit and we cannot estimate the results of any particular franchise." *Id.* at 33.

Nonetheless, the second sentence of the circular asserts that the "estimated initial investment ranges from $149,000 to $269,000 for a start-up franchisee and $137,000 to $248,500 for a conversion franchisee." *Id.* at 2. These estimates are bolstered by two tables that provide itemized price ranges for various anticipated expenditures. *See id.* at 9-10. Furthermore, the UFOC indicates that in compiling the estimates, Maoz "relied on our and our shareholders' 15 years of combined industry experience and experience in establishing and assisting our franchisees in establishing and operating 23 MAOZ VEGETARIAN Units which are similar in nature to the Franchised Unit you will operate." *Id.* at 13. This statement is partially qualified by the sentence that follows it: "The amounts shown are estimates only and may vary for many reasons including the size of your Franchised Unit, the capabilities of your management team, where you locate your Franchised Unit and your business experience and acumen." *Id.*

Plaintiff alleges that it was forced to spend over twice the high end of Maoz's cost projections. Furthermore, according to the Complaint, Maoz subsequently revised its UFOC in 2008 with estimated startup costs $132,000 - $225,000 higher than those cited in the 2007 UFOC. *See id.* ¶ 45. Plaintiff also asserts that "[d]uring the franchise sales process, Maoz provided ALOF with information regarding projected . . . profit percentages." Am. Compl. ¶ 21. However, ALOF provides no additional details regarding Maoz's alleged profit projections.

Prior to consummating their agreement, the Parties had several face-to-face meetings in Washington, DC to discuss the transaction. On August 27, 2007, ALOF purchased the franchise from Maoz. The Franchise Agreement was prepared by Maoz and refers to ALOF's address in Chevy Chase, Maryland. *See* Am. Compl., Ex. B at 1 ("Agreement"). As of that date, Maoz was not registered to sell franchises with either Maryland or New York.

Plaintiff brought this three-count action on August 25, 2010. The first count alleges violations of the Maryland Franchise Registration and Disclosure Law, MD. CODE ANN., BUS. REG. §§ 14-201 to 14-233, based on four theories: (1) Maoz offered to sell a franchise in Maryland without registering its offer with the Securities Commissioner of Maryland, (2) Maoz failed to provide the UFOC to ALOF at or before the Parties' first personal meeting regarding the sale of the franchise, (3) Maoz misrepresented the estimated start-up costs in the UFOC, and (4) Maoz unlawfully provided ALOF with an estimated earnings claim. Count two raises a similar set of claims under the New York Franchise Sales Act, N.Y. GEN. BUS. L. §§ 680-95. Count three is premised on the common-law theory of fraudulent inducement. Defendant Maoz moved to dismiss based on improper service of process, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. Doc. No. 7. The Court denied Maoz's motion to dismiss on all grounds. Doc. No. 10. Maoz now moves for reconsideration of the Court's order

under Federal Rule 60(b), contending that the Court's order denying Maoz's motion to dismiss the Complaint for lack of personal jurisdiction is manifestly unjust. Doc. No. 13.

Additionally, Individual Defendants Marinov and Schweitzer move to dismiss for lack of personal jurisdiction under Federal Rule 12(b)(2), or insufficient service of process under Federal Rule 12(b)(5). Doc. No. 18. The facts relating to the insufficient service of process claim are as follows. On August 31, 2010, the Court issued summonses for service upon Individual Defendants. Doc. No. 2. On September 9, 2010, counsel for Individual Defendants wrote to counsel for ALOF, noting that "both Mr. Marinov and Mr. Boaz Schweitzer are citizens and residents of Israel" and that personal service "must be made upon them in Israel solely in accordance with the Hague Service Convention." Doc. No. 18 Ex. 1 at 3. ALOF subsequently attempted to serve Individual Defendants in New York later that month. On October 4, 2010, ALOF filed affidavits of non-service with respect to Individual Defendants, both indicating that the process server was advised that Individual Defendants were in Israel. Doc. Nos. 3, 4.

Over the next ten or eleven months, ALOF never attempted to execute foreign service of process on Individual Defendants. On August 8, 2011, shortly after Individual Defendants filed a motion to dismiss based on insufficient service of process, ALOF moved the Court for authorization to serve Marinov and Schweitzer in accordance with the Hague Convention. Doc. No. 21. The Court finds that ALOF failed to effectuate service of process on Individual Defendants within a reasonable period of time. Because the Court grants Individual Defendants' motion to dismiss based on insufficient service of process, the Court declines to reach the issue of personal jurisdiction.

**II.     Standard of Review**

5

A.  Reconsideration under Federal Rule 60(b)(6)

Although Federal Rule 60(b)(6) acts as a catch-all provision that gives a court leeway to relieve a party from an order for "any other reason that justifies relief," FED. R. CIV. P. 60(b)(6) (2011), case law limits the reasons for which a court may grant such relief. A court may grant relief under Rule 60(b)(6) only if "such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601 (1949). The Supreme Court has further limited such relief under Rule 60(b)(6) to encompass only those situations involving extraordinary circumstances. *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (1993) (discussing how the Supreme Court's subsequent decision in *Ackermann v. United States*, 340 U.S. 193, 202 (1950) created a particularly high threshold for Rule 60(b)(6) motions).

B.  Service of Process on Non-Resident Defendants

Service of process on a non-resident defendant is governed under Rule 4(f)(1), which provides that an individual may be served in a place not within any judicial district of the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." *See* FED. R. CIV. P. 4(f)(1) (2011). Rule 4(m), which establishes a 120-day time limit for service of process, does not apply to service effectuated outside of the United States. *See* FED. R. CIV. P. 4(m) (2011).

Although the Fourth Circuit has not squarely addressed the time limits on foreign service of process, several courts have determined that a plaintiff must still act diligently and effectuate service abroad within a reasonable period of time. *See USHA (India) Ltd. V. Honeywell Int'l Inc.*,

421 F.3d 129, 134 (2d Cir. 2005) ("Rule 4(m)'s exemption does not apply if, as here, the plaintiff did not attempt to serve the defendant in the foreign county."); *see also Nylik Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005) ("[T]he amount of time allowed for foreign service is not unlimited. . . If, for example, a plaintiff made no attempt to begin the process of foreign service within 120 days, it might be proper for a court to dismiss the claim.") (internal citations omitted); *Allstate Ins. Co. v. Funai Corp.*, 249 F.R.D. 157, 162 (M.D. Pa. 2008) ("[T]he exemption from the 120-day time limit for service in a foreign country does not apply where—as here—the plaintiff has not made a reasonable, good faith effort to attempt service abroad during the 120-day period.").

### III. <u>Analysis</u>

#### A. <u>Minimum Contacts</u>

Defendant Maoz contends that reconsideration of personal jurisdiction is proper here because Maoz can establish through the sworn affidavits of Mitchell C. Shelowitz and Yair Marinov, respectively counsel for and principal of Maoz, that Maoz had no contacts with the state of Maryland, including in connection with the negotiation of the Franchise Agreement with Plaintiff ALOF. Specifically, Maoz argues that it did not initiate contact, advertise, or otherwise solicit or pursue ALOF to join up with Maoz. Rather, Maoz contends that ALOF aggressively pursued Maoz for the purpose of seeking to obtain rights to open a Maoz restaurant in Washington, DC. Maoz argues that it did not realize it was ever communicating with Maryland because ALOF's principal member, Quinn Wallis, had a Washington, DC area code and engaged a lawyer based in Washington, DC. Furthermore, Maoz contends that it did not know at any time that ALOF's principal place of business was somewhere other than Washington, DC. Finally,

Maoz contends that the Maoz franchise operated by ALOF was always intended to operate solely in Washington, DC, and at no time did Maoz ever intend to derive any sales or revenue from Maryland.

None of these contentions address the bases for the Court's finding that Maoz had sufficient minimum contacts with Maryland to render the exercise of personal jurisdiction consistent with due process. The Supreme Court has held that "even a single act" between an in-state resident and a foreign entity may suffice to establish personal jurisdiction, as long as it creates a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Here, both the Uniform Franchise Offering Circular and the final agreement were mailed from Marinov's office in New York to ALOF's address in Chevy Chase, Maryland. This is substantiated by an e-mail between Marinov and Wallis as well as the affidavit of Wallis. The Court does not require proof of postage or a copy of the envelope received over four years ago by Wallis. Moreover, the Franchise Agreement specifically states on the first page that ALOF's principal place of business is 3705 Curtis Court, Chevy Chase, Maryland.

Maoz contends that the franchise operated by ALOF was always intended to operate solely in Washington, DC, and at no time did Maoz ever intend to derive any sales or revenue from the state of Maryland. The Court agrees, which is why it found that section 6-103(b)(2) of the Maryland long arm statute does not provide a sufficient basis for jurisdiction. That section supplies a basis for jurisdiction where the defendant offers "to supply goods, food, services, or manufactured products in the State." § 6-103(b)(2). Instead, the Court held that 6-103(b)(1) and 6-103(b)(3) supplied a valid basis for jurisdiction because Maoz "[t]ransact[ed] . . . business" in

Maryland by negotiating and finalizing a franchise agreement with ALOF's Maryland office. § 6-103(b)(1).

As the Court stated in its Memorandum Opinion, the nature of a franchise agreement is such that it "imposes continuing significant contractual duties upon the franchisee, e.g., reporting and payment obligations." *Choice Hotels Int'l., Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 621 (D. Md. 1998). The franchise contract between Maryland-based ALOF and New York-based Maoz produced an elaborate and ongoing relationship, regardless of the fact that the franchise itself was slated to operate in Washington, DC. Thus, Maoz's connections with Maryland were not merely "random" or "fortuitous," *Burger King*, 471 U.S. at 477-78, but rather were sufficient to forge a "substantial connection" between Maoz and Maryland, *McGee*, 355 U.S. at 223. Accordingly, the Court declines to reconsider its July 7, 2011 holding denying Maoz's motion to dismiss based on lack of personal jurisdiction.

B. New York Franchise Sales Act claims

Additionally, Maoz contends that the New York Franchise Sales Act is inapplicable in the case at bar because ALOF, the franchisee, is not domiciled in New York. Maoz misinterprets the relevant statute and case law. The New York Franchise Sales Act applies when a person offers to sell or sells a franchise in the State of New York. *See* N.Y. Gen. Bus. Law § 683(1). The statute defines when an offer or sale is made in New York:

> (a) An offer or sale of a franchise is made in this state when an offer to sell is made in this state, or an offer to buy is accepted in this state, or, if the franchisee is domiciled in this state, the franchised business is or will be operated in this state.

9

> (b) An offer to sell is made in this state when the offer either originated from this state or is directed by the offeror to this state and received at the place to which it is directed. An offer to sell is accepted in this state when acceptance is communicated to the offeror from this state.

*Id.* § 681(12).

Maoz argues that *JM Vidal, Inc. v. Texdis USA, Inc.*, stands for the proposition that "only the franchisee's domicile matters for purposes of determining whether the statute applies." 764 F. Supp. 2d 599, 617 (S.D.N.Y. 2011). That case, including the partial passage cited by Maoz in its reply brief, *see* Doc. No. 23 at 10, is simply not controlling here. In *JM Vidal*, the court dismissed claims under the New York Franchise Sales Act because absolutely no part of the transaction occurred in New York. *See id.* The court found that there was "nothing to suggest that the offer or sale of the []franchise occurred anywhere other than in Washington (and, perhaps, Barcelona)." *Id.* The Plaintiff in that case attempted to argue that the New York Franchise Sales Act applied because the franchise agreement contained a choice of law provision favoring New York law.

Moreover, the court in *JM Vidal* held that it is not enough that the franchisor's principal place of business be in New York; rather, the pertinent inquiry was whether the agreement could be "deemed to have been *made* in New York." *Id.* In the case at bar, there is no question that Marinov mailed Moaz's Uniform Franchise Offering Circular and final agreement from Marinov's office in New York to ALOF in Maryland. These documents were central to the franchise transaction. The Court therefore finds that Maoz's "offer to sell" the franchise "originated from [New York]," and accordingly declines to reconsider its holding that the New York Franchise Sales Act applies to the Maoz-ALOF franchise. § 681(12)(b).

C. <u>Timeliness of Service of Process on Non-Resident Defendants Marinov and Schweitzer</u>

Individual Defendants Marinov and Schweitzer contend that ALOF's complaint should be dismissed against them because ALOF has failed to serve them with process within a reasonable time. Individual Defendants point to correspondence illustrating that ALOF was aware, as far back as September 2010, that Individual Defendants were citizens of Israel and currently residing in Israel. Individual Defendants also point to e-mails dating back to January 3, 2010, between Individual Defendant Marinov and Wallis, principal member of ALOF, in which Marinov advised Wallis that he was returning to Israel. Finally, Individual Defendants contend that the affidavits of non-service filed with the Court on October 4, 2010 clearly advise ALOF that Individual Defendants were located in Israel. Individual Defendants acknowledge that Rule 4(m)'s 120-day service of process time limit does not bar dismissal here, but argue that failure to serve a non-U.S. defendant within a reasonable time is tantamount to a failure to prosecute, warranting dismissal under 41(b).

ALOF contends that its counsel only recently learned that Individual Defendants are Israeli citizens who reside in Israel. ALOF argues that regardless, its failure to serve Individual Defendants resulted in no hardship or prejudice to Individual Defendants because they are aware of the litigation. Finally, ALOF contends that if the Court grants Individual Defendants' motion to dismiss, ALOF will be harmed because Individual Defendants can plead limitations as a bar to re-filing suit against them.

While the Court understands that granting Individual Defendants' motion to dismiss causes hardship to ALOF, ALOF has had the last ten or eleven months to pursue service of

process with diligence. Moreover, the Court is unconvinced that ALOF only recently learned that Individual Defendants are Israeli citizens who reside in Israel. Extensive correspondence between counsel for Individual Defendants and counsel for ALOF in September 2010 indicates that counsel for ALOF was on notice of this fact. *See* Doc. No. 19 Ex. 1, Ex. 3. Specifically, counsel for ALOF stated in a September 29, 2010 letter that "upon satisfactory proof that neither individual is subject to the jurisdiction of the courts of the United States, we will take appropriate action to either amend the pleadings or to obtain service under the Hague Convention." *Id.* Thus, ALOF's counsel was aware in September 2010 not only that Individual Defendants resided in Israel,[1] but that proper service could be effectuated under the Hague Convention. Moreover, the affidavits of non-service filed by ALOF itself on October 4, 2010 clearly indicate that Individual Defendants are located in Israel. *See* Doc. Nos. 3, 4. That ALOF remained unaware of this fact in light of the correspondence between counsel and affidavits of non-service borders on incredulity.

Finally, ALOF has offered no explanation for its failure to diligently serve process. It merely argues that "good cause exists to permit ALOF a reasonable time to serve [the Individual] Defendants" based on the fact that its lack of due diligence has not caused any hardship or prejudice to Individual Defendants. Doc. No. 22 at 4. However, the absence of prejudice alone does not constitute good cause to excuse untimely service. *Cf. MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (finding that the absence of prejudice never constitutes good cause sufficient to excuse late service not commenced within the 120-day period under Rule 4(j)).

In sum, even though the 120-day time limit for service of process does not apply in the case at bar, the Court finds that it was unreasonable for ALOF to fail to even attempt foreign

---

[1] Counsel for ALOF's letter was in response to a letter by counsel for Individual Defendants informing counsel for ALOF that Individual Defendants resided in Israel. *Id.*

service of process within a reasonable time of the 120-day limit. ALOF cites several cases for the proposition that courts do not hold plaintiffs to the 120-day time limit when plaintiffs are effectuating service in foreign countries. Doc. No. 22 at 2. However, in the cases cited by ALOF, the plaintiffs made at least one and usually several attempts within the 120-day time period to effectuate service of process abroad. *See Nylok Corp.*, 396 F.3d at 807; *see also Pennsylvania Orthopedic Ass'n v. Mercedes-Benz A.G.*, 160 F.R.D. 58, 60 (E.D. Pa. 1995); *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 805 F. Supp. 3, 4 (E.D.N.Y. 1992); *Picard v. Cohmad Secs. Corp. (In re Bernard L. Madoff Investment Secs. LLC)*, 418 B.R. 75, 83 (Bankr. S.D.N.Y. 2009). In the case at bar, ALOF did not make a single attempt to effectuate service abroad within a ten-to-eleven month period of discovering that Individual Defendants were citizens of Israel and currently residing there.

Accordingly, the Court dismisses ALOF's complaint against Individual Defendants due to ineffective service of process. This result furthers the policy consideration, noted by other courts that have recognized time limits for foreign service of process, that courts need to be able to deal with a multitude of cases in a timely and efficient manner. *See Nylok Corp.*, 396 F.3d 805, 807 ("Because district courts need to be able to control their dockets, we have stated that the amount of time allowed for foreign service is not unlimited . . . If, for example, a plaintiff made no attempt to begin the process of foreign service within 120 days, it might be proper for a court to dismiss the claim."); *see also O'Rourke Bros. Inc. v. Nesbitt Burns. Inc.*, 201 F.3d 948, 952 (7th Cir. 2000) ("It may well be that the provision for dismissal without prejudice under Rule 4(m) does not apply when service is attempted in a foreign country, but it does not follow that a court is left helpless when it wants to move a case along.").

While the Court is aware that Plaintiff has now moved to authorize service of process in accordance with the Hague Convention, this motion will be denied as moot because such a motion should have been filed within a reasonable time of ALOF's learning that Individual Defendants were located in Israel. Moreover, ALOF did not even bother to file the present motion until Individual Defendants moved to dismiss ALOF's complaint on the grounds that they had still not been served with process almost a year after the Court issued summonses in this case.

## IV.    Conclusion

Therefore, Defendant Maoz's motion for reconsideration will be denied, Individual Defendants' motion to dismiss for insufficient service of process will be granted, and Plaintiff's motion to authorize service of process will be denied as moot. A separate order will follow memorializing these decisions.

September 13, 2011
    Date

/s/
Alexander Williams, Jr.
United States District Judge