**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

A LOVE OF FOOD I, LLC,

Plaintiff,

v.

MAOZ VEGETARIAN USA, INC.,

Defendant

Civil Action No. 10-cv-02352-AW

**MEMORANDUM OPINION**

Pending before the Court are Defendant Maoz Vegetarian USA, Inc. ("Maoz")'s Motion for Summary Judgment, Doc. No. 41, and Plaintiff A Love of Food I, LLC ("ALOF")'s cross-Motion for Summary Judgment, Doc. No. 43. The Court has reviewed the motions and all supporting documents and held an evidentiary hearing on June 18, 2012 to consider issues of personal jurisdiction. For the reasons articulated during that hearing and below, the Court has found that it lacks personal jurisdiction over Maoz. As a result, the Court will grant Maoz's Motion for Summary Judgment on the issue of personal jurisdiction and deny the remainder of Maoz's motion as moot, deny ALOF's cross-Motion for Summary Judgment as moot, and transfer this case to the U.S. District Court for the District of Columbia where both parties have stipulated that jurisdiction is proper.

## I. FACTUAL & PROCEDURAL BACKGROUND

The following facts are gathered from evidence submitted by the parties at the close of discovery as well as the testimony received during the June 18, 2012 evidentiary hearing. While both parties have moved for summary judgment, of immediate concern to the Court is its personal jurisdiction over Defendant Maoz. Viewing the pleadings in a light most favorable to ALOF, the Court denied Maoz's Motion to Dismiss for Lack of Personal Jurisdiction, *see* Doc. No. 11, as well as Maoz's Motion for Reconsideration, *see* Doc. No. 27. Nevertheless, subsequent developments in the discovery record led Maoz to contend once again in its summary judgment motion that this Court lacks personal jurisdiction over it. *See* Doc. No. 41 at 42–45. Maoz's motion raised genuine concerns for the Court, which held an evidentiary hearing to evaluate the factual bases for personal jurisdiction. Accordingly, the discussion below will focus on Maoz's Maryland ties and other facts pertinent to the personal jurisdiction inquiry.

This action arises out of a franchise relationship between Plaintiff ALOF and Maoz. Maoz is a Delaware corporation with its principal place of business in New York. Maoz sells franchises for the operation of quick-service vegetarian restaurants throughout the United States that trade under the name "Maoz Vegetarian." ALOF is a limited liability company organized under the laws of the state of Delaware, whose principal place of business is listed in the parties' Franchise Agreement as Chevy Chase, Maryland. ALOF operated a Maoz Vegetarian restaurant in Washington, DC from November 18, 2009 until the restaurant closed in January 2012. ALOF's claims relate to certain allegedly fraudulent representations made by Maoz during the franchise negotiation process, as well as Maoz's failure to properly register its franchise in either Maryland or New York.

During 2006, Maoz representative Yair Marinov ("Marinov") began discussing with ALOF co-owners Quinn Wallis ("Q. Wallis") and David Wallis ("D. Wallis") the possibility of

ALOF operating a Maoz franchise in Washington, DC. At the evidentiary hearing, Marinov testified that Q. Wallis first contacted him about the possibility of opening a DC franchise while Q. Wallis was studying abroad in Spain. There appears to be no dispute that Q. Wallis initiated contact with Marinov and that Marinov was not aware that Q. Wallis was planning to locate in Maryland upon returning from Spain. The parties' discussions centered around the purchasing of rights to a DC-based franchise. Although Q. Wallis asked at one point whether he might be able to later purchase rights to a Maryland franchise, the response by Maoz was an unequivocal no.

It appears that upon returning from Spain, Q. Wallis resided in Chevy Chase, Maryland with his father, D. Wallis. Marinov and Q. Wallis continued corresponding by e-mail, and on September 18, 2006, D. Wallis and Q. Wallis attest that they traveled to New York City to meet with Marinov. *See* Doc. No. 43 Exs. 1, 3. Q. Wallis attests that the purpose of the meeting was to discuss "invest[ing] in a … franchise to be located in Washington, DC." Doc. No. 43 Ex. 3 ¶ 2. The parties agree that several months later, D. Wallis and Q. Wallis traveled to New York City to meet with Marinov and visit a new New York City Maoz location. Other than the one or two times they met in New York City, the parties communicated primarily by e-mail during the initial stages of the negotiations. *See* Doc. No. 41 Exs. 8–9, 14–21. There is no evidence that Maoz was aware during this time that Q. Wallis or D. Wallis resided in Maryland.

As the negotiations progressed, the parties met several times in Washington, DC during the summer of 2007. ALOF was formed on May 25, 2007 in expectation of finalizing the franchise agreement. Doc. No. 41 Ex. 2. Although by this point the parties had met several times in both New York City, where Maoz was headquartered, and DC, where ALOF's franchise location was to open, it appears Maoz never traveled to Maryland and was as yet unaware that the Wallis co-owners resided there.

Shortly after ALOF was formed, it hired legal counsel based in Washington, DC who negotiated the franchise agreement with Maoz from June 2007 through August 2007. Doc. No. 41 Ex. 10–12. In addition to communications between the DC attorneys and Maoz, Marinov testified that he coordinated with Q. Wallis by phone on a few occasions and may have called D. Wallis as well. Q. Wallis's cell phone has a DC area code, and D. Wallis's cell phone has a Maryland area code. Q. Wallis testified that he was unsure whether Marinov had ever called him at the Wallis residence in Maryland, and Marinov denies having called Q. Wallis at home. Thus, it appears that the only time Marinov may have called a Maryland phone number was when he called D. Wallis's cell phone, but neither party has provided any information about the substance of these calls or when or how often they were made. Moreover, the Court gathers from Plaintiff that D. Wallis, the father of Q. Wallis, was only a 5% owner of ALOF who provided financial backing but played a less active role in the partnership. As a result, the Court is left with little evidence of telephonic communications by Maoz into Maryland.

Additionally, ALOF has been unable to substantiate its initial contention that certain crucial documents like the Uniform Franchise Offering Circular ("UFOC") and Franchise Agreement were mailed by Maoz into Maryland. Although Q. Wallis testified that Marinov mailed a copy of the UFOC to his Maryland address on or around June 6, 2007, Marinov testified that he never mailed the UFOC into Maryland. Rather, Marinov testified that it was his policy to e-mail documents like the UFOC that would need to be forwarded to attorneys, and that the only material he mailed into Maryland was a glossy marketing brochure that could not be sent by e-mail. The parties' e-mails from early June, 2007 substantiate that some "materials" were indeed mailed into Maryland, but the e-mails do not reveal the nature of the materials sent. Pl's Ex. 1. Notably, June 5, 2007 appears to be the first time Marinov was made aware that Q.

Wallis had a Maryland mailing address. *See id.* Marinov testified that rather than mail the UFOC into Maryland, he had e-mailed it to Q. Wallis on April 17, 2007, after the parties' meeting in New York City. To support this claim, Maoz has submitted an informal Maoz Activity Log in which it appears that on "4/17/2007" Marinov noted "got the UFOC" beside Q. Wallis's name. Def's Ex. 9. Q. Wallis testified that he never received the UFOC via e-mail on that date. Weighing all this evidence together, the Court does not find that ALOF has substantiated by a preponderance of the evidence its initial contention that Marinov mailed the UFOC into Maryland. It appears to the Court just as likely that the UFOC was instead e-mailed to Q. Wallis in April, prior to Marinov's receiving any indication that Q. Wallis might be a Maryland resident.

On August 27, 2007, ALOF purchased the franchise rights to the DC-based Maoz restaurant. Although Q. Wallis testified that the final draft of the franchise agreement was sent to Q. Wallis's home in Maryland, the evidence suggests that it was instead e-mailed to ALOF's attorney in DC. Maoz produced an e-mail sent from its attorney, Mitchell Shelowitz, to ALOF's attorney on August 23, 2007, four days before the franchise agreement was finalized. The e-mail is titled "Final Documents" and states that the franchise agreement and other pertinent documents are attached. Def's Ex. 8(b). The e-mail goes on to request that ALOF's attorney arrange for Q. Wallis and D. Wallis to sign the agreement. *Id.* It appears Maoz's attorney was still unaware of Q. Wallis and D. Wallis's address, since he notes that "[w]e are still missing the home addresses … of Quinn and David" and asks that they provide that information upon signing. *Id.* The e-mail clearly expects Q. Wallis and D. Wallis to sign the attached agreement after adding their addresses and does not discuss any separate mailing of the franchise agreement to the Wallis' residence in Maryland.

Maoz has additionally produced an e-mail sent by Marinov to Q. Wallis the next day, August 24, in which Marinov forwarded the e-mail sent from Maoz's attorney the day before. *Id.* Marinov notes: "[l]ooks like we are ready to go. Please fed ex everything according to Mitch's instructions to our office address …[.]" The reasonable conclusion to be drawn from these e-mails is that Q. Wallis took the documents that had been forwarded to him by Marinov or his attorney, added in his address as requested by Maoz's attorney, signed the documents, and mailed them to Marinov as directed. Neither party disputes that after signing the documents, Q. Wallis mailed them back to Maoz's New York City headquarters via FedEx US Airbill. *See* Pl's Ex. 6. After receiving the documents, it was realized that Q. Wallis had not initialed the documents as required for the agreement to be complete, and so Q. Wallis and Marinov met in DC a few days later to finalize the agreement. *See* Doc. No. 41 Ex. 3 at 100–02.

The Franchise Agreement lists as ALOF's "principal address" the address in Chevy Chase, Maryland where the Wallis co-owners reside. Def's Ex. 10. This is not surprising given that ALOF did not yet have a franchise location set up in Washington, DC. Although ALOF listed its principal address as a Maryland address, it did not bother to register in Maryland as a foreign limited liability company at any point during the negotiation or finalization of the franchise agreement, as is would have been required to do had it been transacting business in Maryland, *see* Md. Corp. & Ass'ns. Code Ann. § 4A-1002.[1]

After signing the agreement, Marinov and Q. Wallis continued corresponding by e-mail about Q. Wallis's search for a franchise location in DC. The e-mails reveal discussions about different DC locations and potential issues with those locations. Once the DC location opened in

[1]The Court will not dwell on this issue because it is interested in Maoz's contacts with Maryland rather than ALOF's.

November of 2009, ALOF acknowledges that all subsequent operations were conducted out of its DC location. In January 2012, the DC location closed.

ALOF brought the present action on August 25, 2010. ALOF's Amended Complaint states three claims against Maoz. Count one alleges violations of the Maryland Franchise Registration and Disclosure Law, Md. Code Ann., Bus. Reg. §§ 14–201 to 14–233, based on four theories: (1) Maoz offered to sell a franchise in Maryland without registering its offer with the Securities Commissioner of Maryland; (2) Maoz failed to provide the UFOC to ALOF at or before the Parties' first personal meeting regarding the sale of the franchise; (3) Maoz misrepresented the estimated start-up costs in the UFOC; and (4) Maoz unlawfully provided ALOF with an estimated earnings claim. Count two raises a similar set of claims under the New York Franchise Sales Act, N.Y. Gen. Bus. L. §§ 680–95. Count three is premised on the common-law theory of fraudulent inducement.

On November 18, 2010, Maoz brought a motion to dismiss for lack of personal jurisdiction. The Court elected not to hold an evidentiary hearing and ruled on the basis of ALOF's well-pleaded allegations that ALOF had made a prima facie case for personal jurisdiction. The Court considered highly relevant ALOF's allegations that: (1) Maoz had mailed certain crucial documents, namely the UFOC and Franchise Agreement, into Maryland; (2) the negotiations had involved phone calls from Maoz's New York office to ALOF's Maryland office; and (3) the general idea that ALOF had a "Maryland office" with which Maoz had communicated over a period of months in the selling of its franchise.

Discovery has subsequently shed light on the overall circumstances surrounding the negotiation and finalization of the Franchise Agreement, however, and within the context of these additional facts, personal jurisdiction over Maoz appears highly tenuous. Although ALOF

listed its principal place of business on the Franchise Agreement as Chevy Chase, Maryland, it appears the actual negotiations for the DC-based franchise occurred almost entirely in DC. Additionally, it appears Maoz never directed any conduct into Maryland other than the mailing of some marketing materials to a Maryland address, which Maoz subsequently discovered was Q. Wallis's address, and which Q. Wallis subsequently chose to list as the principal office of ALOF. The absence of telephonic communications directed into Maryland or meetings in Maryland and Maoz's singular focus on granting rights for a Washington, DC-based franchise are additional facts that weigh against a finding of personal jurisdiction.

## II. STANDARD OF REVIEW

When a defendant challenges the Court's personal jurisdiction prior to discovery in a motion to dismiss, the plaintiff is required only to make a *prima facie* showing of personal jurisdiction. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations. When a defendant asserts that the court lacks personal jurisdiction in a summary judgment motion after the close of discovery, however, the plaintiff must support its *prima facie* showing with an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990). If the defendant contests the plaintiff's factual allegations, then the court must hold an evidentiary hearing at which the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence. *Id.*

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) jurisdiction is authorized under the long-arm statute of the forum state; and (2) the assertion of

jurisdiction comports with Fourteenth Amendment due process requirements. *See Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). The Maryland Court of Appeals has held that Maryland's long-arm statute is co-extensive with the scope of jurisdiction permitted by the due process clause of the Fourteenth Amendment, and the statutory and constitutional inquiries therefore merge in this case. *See Carefirst*, 334 F.3d at 396–97. The Maryland long-arm statute, however, limits specific jurisdiction to cases where the cause of action "aris[es] from any act enumerated" in the statute itself. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). Thus, a plaintiff must "identify a specific Maryland statutory provision authorizing jurisdiction." *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001); *see also Joseph M. Coleman & Assoc., Ltd. v. Colonial Metals*, 887 F. Supp. 116, 118–19, n.2 (D. Md. 1995).

## III. ANALYSIS

Given the information now before the Court, Maoz's connections to Maryland appear to be extremely limited. It is uncontested that Maoz has never visited Maryland or owned property in Maryland. ALOF's allegations in support of finding jurisdiction post-discovery are essentially that Maoz knew upon signing the franchise agreement that ALOF's principal place of business was in Maryland, and that Maoz mailed the UFOC and Franchise Agreement into Maryland. At the evidentiary hearing, however, ALOF was unable to prove by a preponderance of the evidence that either of these crucial documents was mailed into Maryland. As discussed below, ALOF has been unable to show purposeful availment of Maryland law by Maoz, and finding personal jurisdiction here would likely violate traditional notions of fair play and justice.

### A. Long-Arm Jurisdiction

It is appropriate to begin our personal jurisdiction inquiry by considering Maryland's long-arm statute. *See Dring v. Sullivan*, 423 F. Supp. 2d 540, 545 (D. Md. 2006) (consideration under the long-arm statute must remain a separate component of the analysis). At the motion to dismiss stage, the Court found that personal jurisdiction was proper based on two sub-sections of Maryland's long-arm statute, § 6-103(b)(1) and § 6-103(b)(3). At this summary judgment stage, ALOF has the burden of proving by a preponderance of the evidence that personal jurisdiction is proper under at least one of these sub-sections.

1. <u>Personal Jurisdiction under § 6-103(b)(1)</u>

Section 6-103(b)(1) authorizes jurisdiction when a person "[t]ransacts any business or performs any character of work or service in the state." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). "Transacting business pursuant to subsection (b)(1) 'requires actions that culminate in purposeful activity within the state.'" *Capital Source Fin., LLC v. Delco Oil, Inc.*, 520 F. Supp. 2d 684, 689 (D. Md. 2007) (quoting *Bahn v. Chi. Motor Club Ins. Co.*, 634 A.2d 63 (Md. 1993)). "Subsection (b)(1) does not require the defendant to have been present physically in Maryland." *Id.* (citation omitted).

The Court previously found that § 6-103(b)(1) supplied a valid basis for jurisdiction because Maoz "[t]ransact[ed] . . . business" in Maryland by negotiating and finalizing the franchise agreement with ALOF's Maryland office. Doc. No. 10 at 8. Discovery has shown, however, that Maoz's actions were directed almost solely toward Washington, DC rather than Maryland. For example, the Court initially supposed that the parties' agreement was negotiated through telephonic communications between Maoz and Q. Wallis at ALOF's Maryland office. It now appears that ALOF's DC-based counsel handled the franchise negotiations, and that any calls made to Q. Wallis were made to his DC cell phone number.

During the evidentiary hearing, ALOF argued that the ALOF attorney who negotiated the agreement with Maoz should be treated as an agent for ALOF, with the result that all communications made to ALOF's counsel in DC should be treated as being directed to ALOF in Maryland. The Court agrees that ALOF's attorney is its agent, but it does not follow that Maoz directed any activity into Maryland through its negotiations with ALOF's attorney. Because it appears that Maoz was largely if not wholly unaware that ALOF was a Maryland resident while negotiating with ALOF's counsel in DC, communications to ALOF's counsel cannot be seen as culminating in "purposeful activity" within Maryland. There is fairly persuasive evidence that even when the final franchise agreement was sent to ALOF's counsel for signatures, Maoz was unaware that the Wallis co-owners resided at a Maryland address[2] or that ALOF planned to list its "principal office" as their Maryland residence. *See* Def's Ex. 8(b). Nor should Maoz have otherwise suspected ALOF would be based in Maryland, since it was created with the sole purpose of managing a DC-based franchise. Absent any knowledge that ALOF was a Maryland resident, Maoz cannot be considered to be transacting business in Maryland through its communications with ALOF's DC-based counsel about purchasing a DC-based franchise.

Although it appears Marinov e-mailed Q. Wallis several times prior to the signing of the franchise agreement, the e-mails were mostly about arranging meetings and other incidental matters. Moreover, it appears Marinov was unaware that Q. Wallis resided in Maryland during much of this time, or until at least June 2007. Additionally, Q. Wallis was the party that initiated contact with Maoz, and this was done while Q. Wallis was living abroad in Spain. The Court reiterates that it is interested in Maoz's purposeful contacts with Maryland. ALOF cannot create

[2]Although Q. Wallis provided Marinov with his Maryland address for the mailing of materials several months earlier in June, 2007, it is unclear whether Marinov understood that the address being provided was Q. Wallis's residence. Q. Wallis testified that he told Marinov this was the address of his residence, while Marinov testified he was not informed that the address was Q. Wallis's.

personal jurisdiction through its own purposeful acts, such as Q. Wallis's decision to move to Maryland after returning from Spain and to list ALOF's principal office as his home address.

It does appear that Maoz mailed some materials to Q. Wallis in Maryland in early June, 2007. *See* Doc. No. 41 Ex. 8 (e-mail from Q. Wallis to Marinov, stating: "Hey Yair, my mailing address for any material is: Quinn Wallis / 3705 Curtis Ct. / Chevy Chase, MD 20815[.]"). The parties additionally agree that Marinov sent another mailing of marketing materials at some later point. These isolated mailings, however, do not rise to the level of transacting business in the state. Moreover, as discussed above, is not clear that Marinov understood that the "mailing address for any material" was actually Q. Wallis's home address in Maryland. Additionally, there is no evidence that Maoz would have been aware at this point that the Maryland address was actually ALOF's principal office.

There is no dispute that Maoz has never visited ALOF's Maryland office, *i.e.* the Wallis residence. Instead, the parties met several times at a New York City Maoz restaurant and in Washington, DC, where the ALOF franchise was to be located. Given all these facts, Q. Wallis's living in Maryland and having received some e-mails and two mailings there appears entirely irrelevant within the greater context of this transaction. Not only did Maoz have little contact with Maryland throughout the negotiation process, it is unclear whether Maoz was even aware that ALOF considered its "principal office" to be in Maryland until the execution of the Franchise Agreement. Accordingly, Maoz cannot be said to have transacted any business in Maryland.

2. Personal Jurisdiction under § 6-103(b)(3)

Section 6-103(b)(3) applies to any person who "[c]auses tortious injury *in the State* by an act or omission *in the State*." § 6-103(b)(3) (emphasis added). The Fourth Circuit has interpreted

subsection (b)(3) as "requiring either (1) that both the act and the injury occur in Maryland, or (2) that if only the injury occurred in Maryland, the non-resident have some other significant contacts with Maryland. *See, e.g.*, *Craig v. Gen. Fin. Corp. of Illinois*, 504 F. Supp. 1033, 1036 (D. Md. 1980).

This Court previously found that § 6-103(b)(3) supplied a valid basis for jurisdiction in this matter because "the Complaint alleges that Maoz's fraudulent acts were directed at ALOF's Maryland office, and it can plausibly said that ALOF suffered the injury from the fraud in Maryland." Doc. No. 7 at 8. After discovery, however, it appears that neither the alleged injury nor the injury-causing acts occurred in Maryland. Instead, the evidence demonstrates that any relevant acts by Maoz occurred in New York City and/or Washington, DC, where the parties met and negotiated the franchise agreement. Although Maoz sent some marketing materials to a Maryland address, it does not appear that Maoz intentionally targeted or focused its conduct on Maryland. Rather, it appears that Maoz targeted Washington, DC, where it sought to license a franchise. Within this context, ALOF's presence in Maryland appears wholly irrelevant to Maoz's actions.

Moreover, ALOF has failed to establish that the alleged injury occurred in Maryland. ALOF's injury consists of operating losses and loss of capital suffered from its failed Washington, DC franchise. ALOF acknowledges that it ceased transacting business in Maryland and operated solely out of that DC franchise from the time the restaurant opened in November, 2009 until it closed in January, 2012. *See* Doc. No. 43 at 13. Accordingly, it appears that any injury incurred from the failed business would be felt in DC, since DC was the sole location of ALOF's business at the time the injury occurred. Even if ALOF was able to establish that the injury occurred in Maryland, this is insufficient to establish jurisdiction under § 6-103(b)(3)

where the injury-causing acts did not occur in Maryland and Maoz has no substantial ties to Maryland. *See Craig*, 504 F. Supp. at 1036. Accordingly, personal jurisdiction may not be based on § 6-103(b)(3).

B. Constitutional Minimum Contacts

Even if subsections 6-103(b)(1) or 6-103(b)(3) had been found to supply valid bases for jurisdiction, Maoz has such limited contacts with Maryland that finding personal jurisdiction here would impinge on Maoz's basic due process rights. A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). Courts have recognized two types of personal jurisdiction: general and specific jurisdiction. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction is proper where a defendant's contacts with the forum are "continuous and systematic." *Id.* at 416. Since ALOF concedes that Maoz lacks systematic contacts with Maryland, ALOF must establish that Maoz can be held subject to specific jurisdiction in Maryland.

Specific jurisdiction is appropriate when: "(1) the defendant purposely directed its activities toward residents of Maryland or purposely availed itself of the privilege of conducting activities in the state; (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, that is, consistent with traditional notions of fair play and substantial justice."

*Cole-Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F. Supp. 2d 362, 366 (D. Md. 2004) (quotation omitted).

When the Court considered personal jurisdiction prior to discovery, it focused on several facts alleged by ALOF in determining that Maoz had purposely directed its activities toward ALOF in Maryland and that the exercise of personal jurisdiction would not be unfair. First, the Court noted that "both of the documents central to the franchise transaction—the UFOC and the final agreement—were mailed by Maoz to ALOF's address in Maryland." Doc. No. 10 at 10. Second, the Court noted that "the Complaint, though it is somewhat vague on this point, suggests that the Parties conducted a series of telephonic conversations as part of the negotiations leading up to the agreement." *Id.* Finally, the Court noted that the franchise contract "produced an elaborate, ongoing relationship between Maryland-based ALOF and New York-based Maoz …[.]" *Id.* at 11. All three of these allegations have been substantially undermined through evidence produced in discovery and put forth at the evidentiary hearing.

For example, the Court found by a preponderance of the evidence at the evidentiary hearing that the franchise agreement was in fact transmitted to ALOF's counsel in DC rather than mailed into Maryland. Maoz could not mail the final documents to Q. Wallis in Maryland because, as its counsel noted in the e-mail containing the final documents, "[w]e are still missing the home addresses and telephone numbers of Quinn and David. At signing, kindly have each of them provide this information …[.]" Def's Ex. 8(b). ALOF has not substantiated that the UFOC was mailed into Maryland rather than e-mailed to Q. Wallis. Even if the UFOC was mailed into Maryland, this alone cannot support a finding of specific jurisdiction.

Additionally, ALOF has been unable to substantiate its initial allegation that Maoz directed phone calls into Maryland. Rather, as discussed above it appears all substantive

negotiations were handled by ALOF's counsel in Washington, DC, during which period Maoz was unaware that ALOF's "principal office" was located in Maryland.

Moreover, discovery has revealed that after ALOF's DC franchise opened for business in 2009, ALOF transacted business solely from its DC location. Given this new information, the Court can no longer find any "elaborate, ongoing relationship" between *Maryland*-based ALOF and New York-based Maoz. Rather, it now appears that ALOF's Maryland ties were transitory and that any connection Maoz had with Maryland as a result of those ties was merely "random" and "fortuitous," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985) and certainly insufficient to forge a "substantial connection" between Maoz and Maryland, *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Thus, the exercise of personal jurisdiction over Maoz would be inconsistent with due process.

C. Dismissal or Transfer

Having determined that the Court lacks personal jurisdiction over Maoz, the Court must determine whether to dismiss this action or transfer it to another district pursuant to 28 U.S.C. § 1406(a). *See Porter v. Groat*, 840 F.2d 255, 257–58 (4th Cir. 1988) ("adopt[ing] as the rule in this circuit the reading of § 1406(a) that authorizes the transfer of a case to any district, which would have had venue if the case were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district."); *see also Shamsuddin v. Vitamin Research Prod.*, 346 F. Supp. 2d 804, 818 (D. Md. 2004) (transferring rather than dismissing a case after finding that the court lacked personal jurisdiction over defendant).

The Court finds that the interests of justice weigh in favor of transferring rather than dismissing this case, given the potential statute of limitations concerns implicated by dismissal. The parties have stipulated that personal jurisdiction over Maoz would be proper in the U.S. District Court for the District of Columbia because the parties met there, negotiated and finalized the franchise agreement there, and because the agreement centered around rights to a DC-based franchise. If ALOF would prefer to have the Court enter an order of dismissal so that it might appeal the Court's determination of lack of jurisdiction, or if it would prefer to bring suit in some district other than the U.S. District Court for the District of Columbia where Maoz may be sued, then it may file a timely motion to alter or amend judgment, and the Court shall consider such request.

## IV. CONCLUSION

For the foregoing reasons, Maoz's Motion for Summary Judgment is granted on personal jurisdiction grounds and is otherwise denied as moot, and ALOF's cross-Motion for Summary Judgment is likewise denied as moot. For the purposes of clarity, the Court notes that this ruling does not address the merits of ALOF's case, and all issues involving the merits may be re-raised by both parties in the transferee court. A separate Order will follow.

June 28, 2012
Date

/s/
Alexander Williams, Jr.
United States District Judge